IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RHD ELMA, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 365-88C, 339-89C (Judge Bruggink) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**JOINT STIPULATION FOR ENTRY OF JUDGMENT**

For the purpose of resolving the claims of the United States against RHD Elma, Inc. ("RHD Elma") arising out of the South End, Elk and Backstretch Timber Sale Contracts (collectively the "Contracts") without further legal proceedings and without any adjudication of any issue of law or fact, and without constituting an admission of facts or liability on the part of RHD Elma and for no other purpose, the parties stipulate and agree as follows:

1. The Forest Service, United States Department of Agriculture ("Forest Service"), awarded the Contracts to RHD Elma between May 1979 and October 1981. The Contracts later expired uncompleted or were terminated by the Forest Service without RHD Elma having removed all of the timber included in the sales.

2. The Forest Service resold the remaining timber included in the Elk and Backstretch Timber Sale Contracts at a price below that which RHD Elma was obligated to pay under the terms of its Contracts.

3. Between June 1987 and October 1988, the Forest Service contracting officers issued final decisions pursuant to the Contract Disputes Act of 1978, 41 U.S.C. § 601 et seq., assessing damages against RHD Elma totaling $5,539,796.93 (exclusive

of interest) as a result of its failure to perform the Contracts.

4. RHD Elma later instituted these two actions in the Court of Federal Claims (Nos. 365-88C and 339-89C) challenging the contracting officer's decisions. In response to the complaints, the United States asserted counterclaims for the damages assessed by the contracting officers.

5. Thereafter, the parties entered into negotiations for the purpose of resolving this matter amicably.

6. By letter of October 26, 2005 and November 18, 2005, RHD Elma, through counsel, offered to compromise and settle these two cases by paying the United States all of the monies in the escrow accounts established pursuant to the escrow agreement signed on April 15, 1993, between Industrial Indemnity Company ("Surety") and the United States, which is currently valued at approximately $ 1.23 million. Attachment A.

7. RHD Elma's offer in compromise has been accepted on behalf of the Attorney General.

8. RHD Elma and the United States agree to the entry of Judgment in these two actions in favor of the United States in an amount equal to the accrued balance in the escrow accounts referenced above.

9. Upon receipt of the judgment amount due the United States under the terms of this agreement, the United States releases and discharges RHD Elma, its officers, agents, parents, affiliates and assigns from any and all claims, obligations, or demands which relate to, arise out of, or in any manner concern the Contracts which are the subject of this litigation (365-88C and 339-89C), including but not limited to any

claims for damages, interest, attorneys fees, or costs, irrespective of whether the claims, obligations, or demands were asserted in this litigation.

10. In consideration of the foregoing release of claims by the United States, RHD Elma releases and discharges the United States, and its officers, employees, and representatives, from any and all claims, obligations, or demands which relate to, arise out of, or in any manner concern the Contracts which are the subject of this litigation, including but not limited to any claims for damages, interest, attorneys fees, or costs, irrespective of whether the claims were asserted in this litigation.

11. This agreement shall be binding upon and inure to the benefit of the parties to this agreement and their respective heirs, successors, and assignees.

12. This agreement embodies the full and complete understanding of the parties and, upon execution, supersedes all prior understandings and oral agreements between them. Any modification or amendment of this agreement shall be null and void unless it is in writing and signed by both parties or their legal counsel.

13. RHD Elma and the United States each warrant and represent that its officers or agents executing this agreement each have the requisite corporate or statutory authority to do so.

RHD ELMA, Inc.

By: John D. Turnbull President
: John Turnbull, President

UNITED STATES OF AMERICA

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

DENNIS J. DUNPHY
Schwabe, Williamson & Wyatt, P.C.
1420 Fifth Ave., Suite 3400
Seattle, Washington 98101
Tel: (206) 622-1711

Attorney for Plaintiff

DATED: 2/27/06

JAMES M. KINSELLA
Deputy Director
Authorized Representative of the Attorney General

NANCY M. KIM
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530
Tel: (202) 353-0546

Attorneys for Defendant

DATED: 2/23/06

ATTACHMENT A

AGREEMENT

This Agreement, dated this 15th day of April, 1993, is entered into by and between Industrial Indemnity Company ("Surety") and the United States of America, acting by and through the Department of Justice ("United States").

A. Surety issued the bonds listed in Attachment A to secure performance of the contracts between the Purchasers listed in Attachment A and the Forest Service.

B. Thereafter, contracting officers of the Forest Service issued final decisions with respect to each of the contracts, finding the Purchasers in default and assessing damages in excess of the penal sums of the bonds.

C. Thereafter, the Forest Service notified Surety that the Purchasers were in default and demanded that Surety pay the penal sum of the bonds, plus interest. The dates of these initial demands are set forth in Attachment A.

D. The Purchasers disputed liability and filed suit to appeal each of the final decisions to the United States Court of Federal Claims (the "Court"). Each of those cases is currently pending before that court. The docket number of each case is set forth in Attachment A.

E. Because the Purchasers disputed liability, Surety disputed any obligation to pay the bonds or interest thereon and did not satisfy the demands referred to in paragraph C above or subsequent demands by the Forest Service and the Department of Justice.

F. Surety and the United States (the "Parties") desire to reach a full and final settlement of Surety's alleged obligations under the bonds and therefore agree as follows:

1. Surety and the United States each agree that it has the requisite corporate or statutory authority to execute this Agreement and to establish the escrow account(s) provided for in this Agreement.

2. The Parties shall establish escrow accounts at Signet Bank ("Bank"). The funds in the escrow accounts shall be available without any withdrawal penalty and shall bear interest at the highest rate paid by Bank on such accounts.

3. Upon execution of this Agreement, Surety shall deposit with the Bank the amounts set forth in Attachment A, under the column heading "Total" for each bond. A separate escrow account shall be established with respect to each of the bonds listed in Attachment A.

4. The Bank shall hold the proceeds of each account pending its receipt of either (a) instructions signed by both Parties directing it to disburse the funds in an account or (b) the entry of a final, non-appealable judgment in the pending action involving the bond covered by an account:

(a) Joint Instructions: The Bank shall disburse the funds in any account in accordance with instructions signed by both Parties directing it to do so.

(b) Final Judgment In Favor Of The United States: If a final, non-appealable money judgment is

entered in favor of the United States, the United States will present to the Bank (after ten days written notice received by Surety) a copy of that judgment (certified by the Clerk of the Court) along with a letter instructing the Bank to make payment in accordance with this paragraph, and the Bank shall, within ten (10) days of the date of the letter, make payment to the United States as follows:

(i) If the amount of the unsatisfied judgment (including interest, if any) equals or exceeds the total amount in the applicable escrow account, the Bank shall pay the United States the total amount in the escrow account.

(ii) If the amount of the unsatisfied judgment (including interest, if any) is less than the total amount in the applicable escrow account, the Bank shall pay the United States the amount of the judgment. The Bank shall remit the balance in the escrow account to Surety.

In determining whether the final judgment is less than, equals, or exceeds the total amount in the escrow account, the United States shall, unless such a deduction has already been made by the Court, deduct from the amount of the final judgment any amounts received by it on account of the default of the contract for which that bond was written. The amount paid from the escrow account shall be credited against the judgment amount.

(c) <u>Final Judgment In Favor Of Purchaser</u>: In the event the Purchaser obtains a final non-appealable judgment in

which no monies are due the United States, Surety may present (after ten days written notice received by the United States) a copy of the judgment certified by the Clerk of the Court to the Bank and the proceeds of the applicable account shall be paid within ten (10) days to the Surety.

5. Upon deposit of the funds in an escrow account, as provided above, Surety shall be released from any and all further liability with respect to the bond covered by that account, and the original bond shall be canceled, released, exonerated, and returned to Surety. Additionally, the United States shall not, on account of that bond, seek to revoke or object to the renewal of the Surety's listing in T.D. Circular 570.

In each of the cases set forth in Attachment A, the United States caused third-party notices to be served on Surety in accordance with Rule 14 of the Court. In those cases in which Surety has entered its appearance, the United States will consent to Surety's motion to withdraw that appearance; in those cases in which Surety has not entered its appearance, the United States will move to withdraw its third-party notice.

6. The Parties agree to execute any and all documents and instruments necessary to carry out the purposes and intent of this Agreement. Without limitation, Surety agrees to provide the Bank with any necessary tax identification number.

7. The deposit of funds under this Agreement shall not operate as a waiver of any rights or defenses of the

Purchaser or the United States with respect to any of the subject contracts.

8. The Parties further agree that this Agreement does not constitute a settlement between the Purchaser(s) and the United States of the claims and defenses presently being or which may hereafter be asserted.

9. Surety, the United States on behalf of the Forest Service, and each of them, for themselves, their officers, directors, shareholders, successors, assigns, agents, and attorneys, hereby release, exonerate, acquit and discharge the other party, its respective officers, directors, shareholders, successors, assigns, agents, employees and attorneys of and from all liability for any and all actions, claims, suits, controversies and demands of every kind and nature, whether known or unknown, latent or patent, mature or to mature in the future by reason of any damages, costs, expenses and compensation, penalties, out-of-pocket expenses, attorney fees, litigation costs, interest and other damages, whether in contract or in tort arising out of or in any way related whatsoever to the timber sale contracts and bonds which are the subject of this Agreement. This release is effective only as between the Surety and the Forest Service; it is not effective as between (a) the Purchaser and the United States or (b) the Surety and its principal and indemnitors or as to any reimbursement or indemnity rights and obligations as between those parties.

10. Each Party warrants that the terms of this Agreement and release have been carefully reviewed, that each Party understands its contents, and has been advised as to the legal effect of the Agreement by legal counsel obtained by that Party. Each Party further agrees that this Agreement is voluntarily accepted; that the Parties are not executing the document as a result of financial disadvantage; that no promise or inducement has been offered or made except as set forth in this document; that this document is executed without reliance on the statement or representation by any other Party, its agents or attorneys concerning the nature and extent of any Party's, injuries or damages or legal liability of any Party.

11. The Parties acknowledge that they are executing this Agreement solely for the purpose of terminating further controversy between them, and that neither of the Parties admits liability of any sort arising out of any of the claims which are the basis of the controversy between the Parties.

12. This Agreement embodies the full and complete understanding of the Parties, and, on execution, supersedes and renders null and void any and all prior understandings and oral agreements between the parties. Any modification or amendment of this Agreement shall be deemed null and void unless made in writing and signed by both Parties or their legal counsel.

13. This Agreement has been drafted by both Parties through the efforts of their respective legal counsel. The rule

of construction that the Agreement shall be construed against the drafting party is therefore inapplicable to this document.

14. If Bank receives conflicting instructions or determines, for any reason, that it cannot comply with instructions provided to it, it shall notify the Parties, request further instructions, and, in its discretion, retain counsel, commence a court action, deposit the money held into the registry of the court, and request the court to determine the rights of the Parties. When the money has been returned to the Parties or deposited into the registry of the court, the Bank shall have no further duties or responsibilities.

15. The duties of the Bank are purely ministerial. The duties of the Bank are governed by the laws of the Commonwealth of Virginia.

16. Any notice, declaration or request made under this Agreement shall be in writing, signed by the party giving such notice or making such declaration or request, and personally delivered or mailed by certified mail, return receipt requested, to the Parties or the Bank as follows:

<u>For Surety</u>

Jan D. Sokol
Stafford Frey Cooper & Stewart
1700 Benjamin Franklin Plaza
One S.W. Columbia
Portland, Oregon 97258-2097

For United States

United States Department of Justice
Civil Division, Commercial Litigation Branch
P.O. Box 875
Ben Franklin Station
Washington, D.C. 20044
Attn: Allen L. Lear

For Bank

Signet Bank
8330 Boone Boulevard
Vienna, Virginia 22182-2632
Attn: Vincent P. Griffin

17. This Agreement may be executed in one or more counterparts with like effect as if all signatures appeared on one copy.

"SURETY"

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

No. 5

State of California

County of San Francisco

On 4/19/93 before me, Shawn R. Parsley Notary Public
DATE — NAME, TITLE OF OFFICER - E.G., "JANE DOE, NOTARY PUBLIC"

personally appeared John M. Leffingwell
NAME(S) OF SIGNER(S)

☑ personally known to me - **OR** - ☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

SHAWN R. PARSLEY
COMM. #953643
Notary Public-California
SAN FRANCISCO COUNTY
My comm. expires JAN 26, 1996

WITNESS my hand and official seal.

Shawn R. Parsley
SIGNATURE OF NOTARY

**OPTIONAL SECTION**

**CAPACITY CLAIMED BY SIGNER**

Though statute does not require the Notary to fill in the data below, doing so may prove invaluable to persons relying on the document.

- ☑ INDIVIDUAL
- ☐ CORPORATE OFFICER(S)
  TITLE(S)
- ☐ PARTNER(S) ☐ LIMITED ☐ GENERAL
- ☐ ATTORNEY-IN-FACT
- ☐ TRUSTEE(S)
- ☐ GUARDIAN/CONSERVATOR
- ☐ OTHER: ______

**SIGNER IS REPRESENTING:**
NAME OF PERSON(S) OR ENTITY(IES)

**OPTIONAL SECTION**

THIS CERTIFICATE MUST BE ATTACHED TO THE DOCUMENT DESCRIBED AT RIGHT:

Though the data requested here is not required by law, it could prevent fraudulent reattachment of this form.

TITLE OR TYPE OF DOCUMENT Agreement

NUMBER OF PAGES 10 DATE OF DOCUMENT 4/15/93

SIGNER(S) OTHER THAN NAMED ABOVE Allen L. Lear

©1992 NATIONAL NOTARY ASSOCIATION • 8236 Remmet Ave., P.O. Box 7184 • Canoga Park, CA 91309-718

On this 29th day of March, 1993, before me, a notary public in and for said state, personally appeared Allen L. Lear, known or identified to me to be the authorized representative of the Attorney General and acknowledged to me that he had the authority to and executed the same as such.

BERTHA D. WELLS
NOTARY PUBLIC D.C.

Bertha D. Wells
NOTARY PUBLIC FOR DISTRICT OF COLUMBIA CITY OF WASHINGTON
My Commission Expires: 30 June 1997

U.S.

Bank hereby acknowledges the terms and conditions of this Agreement.

By: Vincent P. Griffin
Its: Assistant Vice President
Date: 3/29/93

Industrial Indemnity Company

| Bond No. | Purchaser | Docket No. | Contract | Contract Name | Date of Initial Demand | Interest Rate | Penal Sum of Bond | Interest Through 4/15/93* | Total |
|---|---|---|---|---|---|---|---|---|---|
| YS 840 0803 | Penn Timber | 37-86C | 064761 | Desperate Salmon | 4/3/85 | 12.125% | $ 132,000 | $ 128,610.04 | $ 260,610.04 |
| YS 789 8867 | RHD Elma | 339-89C | 061452 | Elk | 11/30/88 | 9.250% | $ 200,000 | $ 80,128.45 | $ 280,128.45 |
| YS 840 0367 | RHD Elma | 339-89C | 064647 | Backstretch | 11/30/88 | 9.250% | $ 200,000 | $ 80,128.45 | $ 280,128.45 |
| YS 805 4894 | RHD Elma | 365-88C | 062385 | South End | 8/19/87 | 8.875% | $ 200,000 | $ 100,403.30 | $ 300,403.30 |
| | | | | | *RHD Elma Subtotals* | | *$ 600,000* | *$ 260,660.20* | *$ 860,660.20* |
| | | | | | **TOTALS** | | **$ 732,000** | **$ 389,270.24** | **$ 1,121,270.24** |

* For Elk and Backstretch, the interest shown is that through March 30, 1993.

ATTACHMENT A